Good morning, Your Honors. Kathryn Young from the Federal Public Defender's Office for the Appellant, Mr. Perez Mendoza. You only have five minutes. Let me see if I can cut to the chase. Thank you, Your Honor. What concerns me, this is a sentencing appeal. Your client intends he should have received the self-safety valve adjustment, correct? Yes, that's correct, Your Honor. The government's response was that he wasn't really cooperative. Do I understand correctly that at one point a tape was played to your client with his father's voice on it and he wouldn't or couldn't identify it? Is that correct? I think that's correct, Your Honor, from the record. He said that he hadn't seen his father in several years. Didn't the government know from tape conversations that his father had sort of put him into this business? I think there were some conversations prior to his entry into the conspiracy that connected his father to his involvement. And at one point during his debriefing, if you will, he was asked about a particular individual and he said he didn't know him. The individual turned out to be his brother-in-law. I think... Are you right about that? Yes, Your Honor. I think that it is correct that at one, there were two proffers at the first proffer. He said he didn't know someone and he corrected himself at the second proffer, explaining that he had been nervous at the previous proffer. And you don't think that's enough to foreclose safety valve consideration? With respect... Tell us why. Tell us why. Yes, thank you, Your Honor. With respect to the issue of his saying that he didn't know someone and then correcting himself at the second proffer, saying that he had been nervous at the first one, the law is clear that it only has to be done prior to sentencing. And so if you provide information prior to the date of sentencing, that's sufficient, even if your evidence may have been corrected and initially you said the wrong thing and then you said the correct thing. So with respect to that issue, it was corrected prior to sentencing. I would hardly describe as saying I don't know someone as being incorrect. Well, he explained that he was nervous, but he then corrected himself. So nervous he couldn't tell if someone was his brother-in-law? I can't remember exactly who it was he said he didn't recall, and I think there's also some confusion as to the exact nature of the relationships between the various individuals. What does nervous have to do with it? I'm sorry, Your Honor. What does nervous have to do with it? That was his explanation. I'm sorry. What kind of explanation is that? I mean, he misspoke, he was nervous when he spoke, he was nervous and he didn't recognize, he was nervous and he decided to lie. What does nervous mean? Well, that's the state of the record, Your Honor. I'm not sure exactly what he meant, but our point is... Well, you're his lawyer, you know, you're his advocate. Why can't the government say you were nervous and if you came clean, being nervous, you should have told the truth, you should have opened up and held nothing back. And if you told a lie because you were nervous, that means that you're sitting there thinking, instead of deciding to come clean and to give us everything you have, you're sitting there calculating what you can get away with, and that does not come in clean and for that we're not going to give you the equity of a safety valve. That's how I would think a prosecutor would think about this. I understand your point, Your Honor, but there are cases... He says I'm nervous and I couldn't hear well, or I'm nervous and I, so I, you know, I got confused about who it really was, but he doesn't say that. It sounds to me like, you know, I was nervous and I couldn't tell whether I, maybe I could get away with this. I understand Your Honor's point, but I think there are cases that are cited in the opening brief that even if you say something wrong the first time but you correct it the second time... Did he walk away from the second proffer? He did walk away from the second proffer. And what were the circumstances of that? He had been asked about his father's involvement and he declined to talk about his father's involvement. And as explained in the opening brief, we believe that that is acceptable under the principles of relevant conduct, as explained in the opening brief, that his father's involvement was not relevant conduct to Mr. Perez-Mendoza's involvement, and therefore he was not required to be eligible for the safety valve to discuss what his father was doing. According to the probation officer, his father ran a different operation that was separate from this instant operation, and therefore it was not germane under the principles of relevant conduct. So, I mean, what does it matter whether it's germane under the principles of relevant conduct? The point of the safety valve is if you tell everything you know, it doesn't have to be stuff that you could be convicted of or could be sentenced for. You know what criminal activity, we ask you about it, you tell us. That's what you become a source for the government. That's correct, Your Honor, but I think that's limited by the law that's cited in the opening brief with respect to the fact that the application notes tell us that in the case of a conspiracy, it's limited to the scope of the agreement that the task of the defendant actually agreed. What is the it? I'm sorry? What is the it? It's limited to the agreement. What is? The scope of the testimony. You're required to testify, give the defendant all information and evidence the defendant has concerning the offense or offenses, and the application notes tell us that that relates to the defendant's, they're supposed to focus on what the defendant actually agreed to undertake. That's the nature of his relevant conduct, and that's the nature of the disclosure that he's required to make under the safety valve requirements. You, somewhere in the record, there's some indication that you're asking for sealing of some part of these proceedings. Is that correct? Yes, Your Honor. Your Honor, normally in the case of cooperation, and he did, in fact, I should mention, he did talk all about his own involvement and the people he dealt with, the people he received the drugs from, the people he gave the drugs to. What are you asking to be sealed? The records that we filed under seal and the briefing, because it does address his cooperation, which is a dangerous thing for someone to have when they're in custody. Anything about, obviously, this argument hasn't been made confidential in any way. Are you saying anything needs to be done in the, any disposition? We've asked, I think, for the disposition, the briefing, and we filed certain records under seal. That referenced the fact that he cooperated, because that's a very dangerous thing to have publicized for someone in custody. So we should not put that into a disposition? Is that what you're saying? Yes. In other words, if there's an MD or an opinion in this case, Yes, thank you, Your Honor. I'm just trying to understand what the scope of what you're asking for is. Yes, Your Honor. I think the scope is the fact that we don't want the fact that he cooperated to be made known publicly. Okay. Just to make sure the application is known, which application notes specifically are you referring to and what language are you relying on? Well, I rely on several applications. I'm talking about the application notes to Section 1B1.3. Application note 1 talks about the fact that the principles I'm sorry. Where is this in your brief? Which application note? Application, the criteria for eligibility for safety valve is 5C1.2, and that refers us to relevant conduct, which is 1B1.3. And I refer to application notes 1, which talk about the principles for accountability under the principles of relevant conduct. What is that page 32 of your brief, Barron? I'm sorry, Your Honor. This is the one at the bottom of page 32 of your brief. Just to make sure I'm reading the same language as you are. Yes, Your Honor. And what is it here that you find helpful? I mean, it seems to start off unhelpful to you. It says the principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. Yes, and I think that's helpful. Which is sort of, I'm promising. As I interpreted it as saying that it's actually more limited. The focus is on the specific acts and omissions for which the defendant is to be held accountable. In other words, he's not accountable for the entire conspiracy. He's only accountable for what he agrees to undertake. And then the next page, page 32, focuses on the fact that the court must determine the scope of the criminal activity the particular defendant agreed to undertake. And then it goes on. What does this have to do with safety valve? I'm sorry, Your Honor. What does this have to do with safety valve? Because this is relevant conduct. This is what he can be punished for. But we're not talking about safety valve. I understand, Your Honor. How does this relate to safety valve? Because section 5C1.2, which sets forth the element of the safety valve, talks about the application note 3 to 5C1.2 defines offense or offenses that were part of the same course of conduct or common scheme of plan, says it means the offense of conviction and all relevant conduct. So the relevant conduct in section 1B1.3 is incorporated into 5C1.2 through application note 3. So you think, okay, 5C1.2. Let me just go to the template to make sure I am following what you're arguing there. So I'm looking at 5C1.2. And where are you looking there? Application note 3. You're not looking at 5C1.2 itself. No. That talks about 5C1.2 itself states that defendant has to provide information concerning the offense or offenses that were part of the same course of conduct or common scheme or plan. And then that term is defined in application note 3 to mean the offense of conviction and relevant conduct. And from there you move to the definition of relevant conduct in 1B1.3. Okay. Thank you. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court, Jeff Mitchell on behalf of the United States. Do you think the matters are adequately covered in your brief? Yes, Your Honor. Okay. Thank you. Thank you, Your Honor. Cases are usually submitted. We'll now hear argument in United States v. Jamarillo. Thank you, Your Honor.
judges: Kozinski, Hawkins, Fisher